# THE LAW OFFICES OF
# FAUSTO E. ZAPATA, JR., P.C.

BROADWAY CHAMBERS BUILDING
277 BROADWAY
SUITE 206
NEW YORK, NY 10007

TEL: (212) 766-9870
FAX: (212) 766-9869
E-MAIL: FZ@FZAPATALAW.COM
WEB: WWW.FAUSTOZAPATA.COM

April 27, 2018

Katherine Forrest
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: Perez v. Cohen & Steers Capital Management, Inc., S.D.N.Y. Case No. 17 Civ. 09195 (KBF) (KNF)

Dear Judge Forrest,

This letter is submitted jointly with Loren Gesinsky of Seyfarth Shaw LLP, attorney for Defendant in the above referenced matter seeking approval of a negotiated settlement in a lawsuit involving claims under the Fair Labor Standards Act. Enclosed, please find the proposed Settlement Agreement in connection with the above referenced matter, which is a fair and reasonable settlement for the reasons discussed below.

This action arises under the Fair Labor Standards Act, the Minimum Wage Act and the New York Labor Law. The Plaintiffs allege that the Defendant violated the wage and hour laws and that the Defendant owes the Plaintiffs back wages, liquidated damages, and penalties. Defendants deny such allegations.

Parties may not privately settle FLSA claims with prejudice absent the approval of the district court or the Department of Labor. See *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015) (Second Circuit held that F.R.C.P. 41(a)(1)(A)(ii) "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect."); *Yunda v. SAFI-G, Inc.*, 2017 U.S. Dist. LEXIS 65088 (bifurcated settlements wherein FLSA claims are submitted to the court for approval but parallel NYLL claims are not is permissible because NYLL parallel claims do not require court approval); *compare*, *Gaughan v. Rubenstein*, 2017 U.S. Dist. LEXIS 107042, 2017 WL 2964818 (pre-litigation FLSA settlements do not require approval of the district court or the DOL if the plaintiff was represented by counsel).

In the absence of Department of Labor approval, the parties must satisfy this Court that their settlement is "fair and reasonable." *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015). For a court to find a settlement is fair and reasonable, "the parties must provide enough information for the court to examine the bona fides of the dispute. The employer should articulate the reasons for disputing the

employee's right to a minimum wage or overtime, and the employee must articulate the reasons justifying his entitlement to the disputed wages." *Id.* (internal quotes omitted).

To determine whether a settlement is fair and reasonable under the FLSA, courts "consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).

I. Plaintiff range of possible recovery

Plaintiff worked for Defendant as a Desktop Support Specialist with Defendant's asset management firm. Plaintiffs' duties included, among other things: (1) responding to requests for technical support; (2) providing high-level desk-side and technical support resolving day to day technical issues for users; (3) providing technical and analytic guidance as it relates to servers, storage, networking, telephones and other IT systems; (5) diagnosing and resolving issues, setting up, repairing, and maintaining a wide range of hardware, including telephones, desktops, laptops, and printers; (6) diagnosing and resolving issues, installing, repairing, and maintaining a wide range of software; (7) creating packaging and deployment of third party applications for Windows Servers; (8) automating multiple environments using automation solutions; (9) writing scripts that perform system tasks and change configurations; (10) strategizing and collaborating with Development, Security and Infrastructure IT teams to implement efficiencies; (11) working closely with other IT employees on system maintenance and configuration projects; (12) assisting support vendors in remote offices; (13) participating in the design and implementation of the next iteration of Cohen & Steers' IT infrastructure which encompassed an extensive technology refresh in terms of upgrading the services offered to users; (14) working closely with the Cohen & Steers Application Support, Development and IT Security functions to optimize day-to-day operational support procedures; and (15) providing technical assistance and training.

Plaintiff alleges that he was misclassified as exempt salaried employee and as such was not paid premium overtime wages when he worked more than 40 hours in a calendar week.

Defendant maintains that, during the relevant period, the Plaintiff was properly classified as exempt and, in any event, that the Plaintiffs did not work more than 40 hours per week, and if he worked more than 40 hours in a calendar week, then the amount of additional work at issue was *de minimis* in nature.

The parties agreed that the Plaintiff's claims are limited temporally, from December 14, 2015, through December 31, 2016, and that the Plaintiff could only have worked overtime for 39 weeks because of the number of days off that the Plaintiff took

2

over the course of the relevant timeframe. Defendant did not begin to require Plaintiff to report to payroll through timesheets the number of hours that the Plaintiff worked each week until January 2017. However, Defendant produced records of the work hours that Plaintiff self-reported August 2016-December 2016 and a detailed analysis of the amount of time that Plaintiff actually spent working, based on the times Plaintiff used his access card to access Defendant's office building and the times that Plaintiff sent emails. The Plaintiff alleges that he worked approximately 10 hours of overtime each of the 39 weeks at issue herein. Defendant disputes this allegation and counters that, based upon the data referenced above, Plaintiff worked no more than 62 hours of overtime in total (i.e., an average of around 1.6 hours of overtime per week) during the relevant period. Plaintiff disputes that his arrival times and emails accurately reflect the hours he worked. Defendant further states that Plaintiff received meal periods that would further reduce the number of hours that the Plaintiff could have worked. While Plaintiff admits that he enjoyed meal periods, the parties dispute the duration of such meal periods to the extent that the Plaintiff alleges that such meal periods were for less than 20 minutes and Defendant contends that they lasted more than 20 minutes and up to an hour on occasions.

For the purposes of settlement, the parties agreed to resolve all the overtime claims for $15,000, which amounts to approximately 9.6 hours of overtime per week for 39 weeks, or a total of 375.90 hours. The parties utilized the half-time method to calculate the overtime wages due because at the time that the Plaintiff was hired, the parties had a clear understanding, reduced to writing, that the Plaintiff would be paid an annual salary of $70,000 in addition to a bonus as compensation for all of the hours that the Plaintiff would work, regardless of whether the Plaintiff worked more or less than 40 hours in a calendar week. Moreover, during the relevant timeframe, the Plaintiff's hours varied from week to week. We calculated the hourly rate by adding the yearly salary and a $13,000 bonus and dividing the total by 52 weeks; and then dividing again by 40 hours.

| Dates | O/T Hours for 39 weeks | Hourly Rate | O/T Rate[1] | Unpaid O/T | Liquidated Damages | Combined Unpaid OT and Liquidated Damages |
|---|---|---|---|---|---|---|
| 10/27/13 – 12/29/2013 | 375.90 | $39.90 | 19.95 | $7,500 | $7,500 | $15,000.00 |

In addition to the above damages, Plaintiff also settled claims alleging violations of N.Y. Labor Law § 195(1)(a) and (3) for $5,000 each, or $10,000 in total.

Plaintiff calculates that if he were to succeed in all his claims, he would recover $7,780.50 in overtime wages, $7,780.50 in liquidated damages and $10,000 in damages pursuant to N.Y. Labor Law 195(1)(a) and (3).

---

[1] Rounded up to the nearest decimal place, e.g., $61.845 is rounded up to $61.85.

Defendant denies that Plaintiff is entitled to any damages. To the extent that Plaintiff may be entitled to damages, Defendant maintains that Plaintiff's damages, including liquidated damages, would be significantly lower than what Plaintiffs claim. Defendant calculates its exposure with respect to Plaintiff to not exceed $10,000 even factoring in liquidated damages and interest.

II. The extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses

Counsel for the parties are both experienced in litigating and resolving wage-and-hour matters and both dedicate a significant portion of their practice to doing so. The parties engaged in extensive negotiations lasting several months. After much discussion regarding the strengths and weaknesses and risks of going forward, the parties made a reasoned decision to settle this lawsuit due to the uncertainties of litigation and the likelihood that the legal fees associated with the Defendant's legal expenses in defending itself through a dispositive motion or trial would exceed the settlement amount.

III. The seriousness of the litigation risks faced by the parties

Parties to litigation face risk and expenses that are inherent in litigation, including appeals, and post-judgment collection proceedings. Here, Plaintiff also faces the risk of no, lower, or delayed recovery because the Defendant has the resources to litigate this case through appeals process. On the other hand, the Defendant acknowledges that it may have exposure associated with the Plaintiff's claims and have assessed the likelihood of successfully defending this matter against the benefits of resolving this matter at this stage of the litigation process.

IV. Whether the settlement agreement is the product of arm's-length bargaining between experienced counsel

After discussing the strengths and weaknesses and risks of going forward, the parties made the reasoned decision to settle this lawsuit due to the uncertainties of litigation and the likelihood that the legal fees associated with Defendant's legal expenses in defending itself through a dispositive motion or trial would exceed the settlement amount.

V. The possibility of fraud or collusion.

Attorneys who are experienced in labor and employment litigation matters, including wage and hour litigation under the FLSA, represented the parties.

Counsel for both sides utilized their experience and spent almost five months thoroughly analyzing the claims and defenses, determining potential damages for Plaintiffs, and engaging in arms-length negotiations to achieve a fair resolution for the parties. The parties themselves were also heavily involved in the settlement negotiations

and had the opportunity to carefully review the terms of the settlement agreement before executing. Thus, there was no possibility of fraud and collusion throughout the process.

The parties represent to the Court that the settlement agreement is fair to the Plaintiffs, reasonably resolves bona fide disagreements between the Plaintiffs and Defendant about the merits of the Plaintiffs' claims; and demonstrates a good faith intention by the parties that their claims for liability and damages be fully and finally resolved and not re-litigated in the future.

On this basis, the settlement reached was fair and reasonable.

The parties agreed to settle all of Plaintiff's claims, including statutory attorneys' fees, for $25,000.00. The settlement is to be broken down as follows:

   a. $3,133.34 in back wages less applicable tax withholdings, under the FLSA;
   b. $3,133.33 in FLSA and NYLL liquidated damages in connection with the unpaid overtime wages;
   c. $5,000 attributed to damages pursuant to New York Labor Law § 195(1)(a);
   d. $5,000 attributed to damages pursuant to New York Labor Law 195(3);
   e. $8,733.33 as attorneys' fees and costs payable to "The Law Offices of Fausto E. Zapata, Jr., P.C."

Under the Fair Labor Standards Act and New York's Labor Law, the Plaintiff is entitled to an award of reasonable attorneys' fees. As an initial matter, courts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases. *See, Gaspar v. Personal Touch Moving, Inc.*, No. 13-CV-8187, 2015 WL 7871036, at *2 (S.D.N.Y. Dec. 3, 2015) ("Fee awards representing one third of the total recovery are common in this District."); *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 U.S. Dist. LEXIS 134207, 2013 WL 5308277, at *1 (approving attorneys' fees of one-third of FLSA settlement amount, plus costs, pursuant to plaintiffs retainer agreement, and noting that such a fee arrangement "is routinely approved by the courts in this Circuit"); *Palacio v. E*TRADE Fin. Corp.*, No. 10-CV-4030 (LAP), 2012 U.S. Dist. LEXIS 88019, 2012 WL 2384419, at *6 (S.D.N.Y. June 22, 2012) ("[T]he percentage of recovery method ... is consistent with the 'trend in this Circuit.'" (quoting *McDaniel v. City of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) (discussing common fund class actions))).

With regards to statutory attorneys' fees, courts in this District routinely award hourly attorney fee rates ranging from approximately $175 to $500—depending on experience—for attorneys working on FLSA litigation. *Calicia v. T&H Village Food Corp d/b/a Village Diner, et al.*, 12 Civ. 3150 (E.D.N.Y. 2012); *Kahlil v. Original Old Homestead Rest.*, 657 F. Supp. 2d 470 (awarding hourly rate of $400 for a "senior lawyer with 25 years' experience"); *Ferrara v. CMR Contracting, LLC*, 848 F. Supp. 2d 304, 313 (E.D.N.Y. 2012) ("In recent years, courts in this district have approved hourly fee rates in the range of $200 to $450 for partners, $100 to $300 for associates and $70 to $100 for paralegal assistants") (*Toussie v. County of Suffolk*, 2011 U.S. Dist. LEXIS

58179, 2011 WL 2173870, at *2 (E.D.N.Y. May 31, 2011) (awarding $400 to an attorney with 7 years' experience); *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 507-08 (S.D.N.Y. 2012) (awarding fees to Plaintiffs' counsel's firm at rates of $175/hour for associate work and $350/hour for partner work); *Wong v. Hunda Glass Corp.*, No. 09-CV-4402, 2010 WL 3452417, at *3 (S.D.N.Y. Sept. 1, 2010).

My offices bill $400 an hour for my time, $300 an hour for my associate, and $95 an hour for my paralegal rate. Here, I billed 20 hours, and my associate billed 3.5 hours. I have reviewed the annexed billing records, and I hereby certify that these records accurately reflect work reasonably and necessarily performed to litigate this matter effectively.

The proposed hourly rates are reasonable given the nature of my practice and the rates that comparable attorneys and/or firms bill. To elaborate further, my firm, The Law Offices of Fausto E. Zapata, Jr., P.C., is a small firm in Manhattan, founded in 2005, that almost exclusively represents individual plaintiffs in a wide range of labor and employment issues.

From the moment our office was retained to represent the Plaintiff, I was lead counsel responsible for the prosecution of this action. My associate and I have maintained contemporaneous time records reflecting the time spent on this matter. Our time was entered by computer and subsequently reviewed for accuracy.

The annexed billing records also show that my firm incurred out of pocket expenses in the amount of $400. The documented costs are costs my firm normally charges our paying clients and are customary litigation expenses such as court filing fees, process server fees, and postage.

My associate, Michael P. Coviello, Esq., assisted me in the prosecution of Plaintiffs' case. Mr. Coviello began working in my office in February 2016, and since that time has worked exclusively on labor and employment matters. Consistent with billing practices mentioned above, in this matter, Mr. Coviello's hourly rate is $300. He obtained his Bachelor of Arts in English from the State University of New York at Geneseo, and obtained his Juris Doctor from St. John's University School of Law. Mr. Coviello has represented public and private sector employees in various matters, including disciplinary investigations, administrative trials and hearings, settlement negotiations and civil service appeals. He regularly represents employees in labor and employment litigation in state and federal courts. Mr. Coviello's hourly rate of $300 is at or below Manhattan attorneys of similar skill, reputation, and experience.

My hourly rate of $400 is reasonable because it is consistent with or below that charged by Manhattan attorneys of similar skill, reputation and experience and in line with rates awarded such attorneys on fee applications.

I am the founder of The Law Offices of Fausto E. Zapata, Jr., P.C., and I have 15 years of experience in the field of labor and employment law. I obtained my Bachelor of

Science in Criminal Justice from St. John's University and a Juris Doctor from The Benjamin N. Cardozo School of Law. I have litigated a variety of labor and employment matters in both Federal and New York State courts.

In the recent past, I have successfully handled numerous wage and hour matters ranging from individual claims to collective actions involving over 400 plaintiffs. (*See, Ramos v. The City of New York*, S.D.N.Y. 13 Civ. 9225 (KBF); *Ozpinar, et al. v. L & G Delite, LLC, et al.*, E.D.N.Y. 13 Civ. 7368 (SJ)(CLP) (court approved 40% contingency fee in settlement); *Stephens v. The City of New York, et al.*, S.D.N.Y. 13 Civ. 2364 (KBF); *Olga Quintana v. United Building Maintenance Associates, Inc.*, E.D.N.Y. 11 Civ. 5708 (KBF) (court approved 40% contingency fee in settlement); *Jehle v. The Christophers, et al.* S.D.N.Y. Index No. 14 CV 2284 (court approved 40% contingency fee in settlement); *Sanchez v. Metro Terminals Corp.*, et al., E.D.N.Y. 10 Civ. 1645 (court approved 40% contingency fee in settlement); *Carmen Maidana v. La Esquina Criolla Restaurant, Inc., et al.*, E.D.N.Y. Case No. 11 Civ. 2606 (CBM) (CLP)).

Moreover, my experience in labor and employment law includes drafting employment handbooks, employment contracts, negotiating contracts; and, representing clients in work-related investigatory interviews with law enforcement agencies, New York Civil Service Law §§ 72, 75, and 76 hearings, and New York City Conflict of Interest Board proceedings. I also represent clients in New York CPLR Articles 75 and 78 special proceedings, unfair labor practices before the National Labor Relations Board, improper practice petitions before The City of New York Board of Collective Bargaining; and, arbitration at the American Arbitration Association, The City of New York Office of Collective Bargaining, and The City of New York Department of Education Grievance Panel Appeal. I also represent clients in appeals before The City of New York Civil Service Commission, The City of New York Department of Citywide Administrative Services, and New York State Appellate Division.

In the last eight years, I have represented numerous clients in matters involving the Family Medical Leave Act and unlawful discrimination, including housing, gender, sexual orientation, race, and disability discrimination. Many of these cases were resolved during litigation and some were resolved pre-litigation.

I also represent clients in proceedings with governmental licensing agencies involving disciplinary proceedings relating to their employment, including the United States Coast Guard, New York State Department of Health, and New York State Office of Children and Family Services.

I have been an invited speaker at the AFL-CIO Lawyers Coordinating Committee Minority Outreach Program in 2003, 2004, and 2010.

I was an invited speaker at a Continuing Legal Education class at the AFL-CIO, Lawyers Coordinating Committee, Northeastern Regional Conference Northeastern Regional Conference in 2010, where I presented a paper entitled, *The Human Rights Law and Affirmative Defenses in the Labor Context.*

On April 28, 2011, I was the Moderator at an AFL-CIO, Lawyers Coordinating Committee Annual Conference entitled, *What Union Lawyers Need to Know about the Americans with Disabilities Act Amendments Act (ADAAA) and the Genetic Information Nondiscrimination Act (GINA)(Regulations and Litigation)*.

I was an invited speaker at a Continuing Legal Education class before the American Bar Association Committee on the Development of the Law under the National Labor Relations Act 2012 Mid-Winter Meeting, where I presented a paper entitled *Come Monday, It'll be Alright, Come Monday, We'll Be Payin' You Right: Routine Remedy or Radical Departure? Is Backpay for Undocumented Immigrants Beyond the Scope of the Board's Remedial Processes? Mezonos Maven Bakery, 357 NLRB No. 47*.

On November 6, 2014, I was an invited speaker at a Continuing Legal Education class before the American Bar Association Committee Labor and Employment Law Section, 8th Annual Labor and Employment Law Conference, where I presented a paper entitled *Intersection of Race, Ethnicity, Gender and Disability Discrimination*.

With regards to attorneys' fees, Plaintiffs' counsel accepted this case with the understanding that Plaintiffs' counsel would fund the litigation and would receive a contingency of 33.3% of the gross recovery amount, in this case $8,333.33. The Plaintiffs agreed to these terms and signed a retainer stating the same.

When applying the percentage method to an award for attorney's fees, courts in this Circuit follow the trend of applying the lodestar method as a "cross-check" to ensure the reasonableness of the award. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Davis*, U.S. Dist. LEXIS 117082, 2011 WL 4793835, at *10 (*citing Goldberger*, 209 F.3d at 50). The lodestar is assessed by "multiplying the hours reasonably expended on the case by a reasonable hourly rate." Courts then consider factors such as: "(1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved." *Johnson v. Brennan*, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376, at *20 (internal citations omitted). Courts commonly award lodestar multipliers between two and six. *See id.* (discussing cases where lodestar multipliers between 2.09 and six were awarded).

Here, the multiplier would be in the range of 1.04. One court found that "[i]n recent years multipliers of between 3 and 4.5 have become common" and described 2.09 as "at the lower end of the range of multipliers awarded by courts within the Second Circuit." *In re Lloyd's Am. Trust Fund Litig.*, 2002 U.S. Dist. LEXIS 22663, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002); *see also Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (finding multiplier of 4.65 "well within the range awarded by courts in this Circuit and courts throughout the country"); *Fujiwara v.*

8

*Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014) ("In this Court's opinion, a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases. The plaintiffs' bar is presumably selective enough with the cases they take on to win a recovery in at least half of them. A multiplier near 2 compensates them appropriately").

At this time, Defendant takes no position with respect to Plaintiffs' counsel's request for attorneys' fees.

On this basis, the parties agree that this settlement is an equitable resolution to the instant matter.

Very truly yours,

Fausto E. Zapata, Jr.

C:    L. Gesinsky
       C. Valletta
       File